UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

| | |
|---|---|
| USDC SDNY | |
| DOCUMENT | |
| ELECTRONICALLY FILED | |
| DOC #: _____ | |
| DATE FILED:   10/6/2015 | |

JANET JOHNSON,                                      :

                            Plaintiff,              :         **OPINION**

            - against -                             :         14cv2086-FM

COMMISSIONER OF SOCIAL                              :
SECURITY,

                                                    :

                            Defendant.

----------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

           Plaintiff Janet Johnson ("Johnson") brings this action pursuant to Section

205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), seeking

review of a final decision of the Commissioner ("Commissioner") of the Social Security

Administration ("SSA") denying her application for Supplemental Security Income

("SSI").  The parties filed cross-motions for judgment on the pleadings pursuant to Rule

12(c) of the Federal Rules of Civil Procedure.  (ECF Nos. 14, 20).  On September 30,

2015, the Court denied the Commissioner's motion, granted in part Johnson's cross-

motion, and remanded this case pursuant to the fourth sentence of 42 U.S.C. § 405(g) for

further administrative proceedings.  (ECF No. 24).  This Opinion explains the basis for

that decision.

I.   Background

    A.   Facts

A detailed recitation of the medical and non-medical evidence may be found in the parties' motion papers.  (See ECF No. 15 ("Def.'s Mem."); ECF No. 21 ("Pl.'s Mem.")).  In brief, in 1991, Johnson began working as a home healthcare aide.  In 1994, she stopped working when she became pregnant.  (R. 20-21).[1]  In 1996, Johnson suffered a fall, dislocated her left knee, and underwent arthroscopic surgery.  (Id. at 22).  Johnson subsequently returned to work before finally stopping work in 2001 due to leg pain.  (Id. at 23-24).  Johnson has not worked since then.  (Id. at 24).  Johnson subsequently underwent a second, reconstructive surgery of her left knee.[2]  (Id.).

According to her hearing testimony, Johnson experiences mild pain every day, which turns severe intermittently and may last up to a week.  (Id. at 26-27).  The pain sometimes prevents her from walking.  (Id. at 26).  Johnson takes Tylenol, although it does not help, but does not use other pain medication.  A doctor recommended that she attend physical therapy, but she cannot because she lacks insurance.  (Id. at 27).  At one time, she was prescribed a cane.  (Id. at 34).

In terms of activities of daily living, Johnson reported that she prepares simple meals daily, experiences no problems performing personal care activities, and

---

[1]    "R." refers to the certified copy of the administrative record filed by the Commissioner.  (ECF No. 13).

[2]    It is unclear from the records whether this surgery occurred in 2008 or in 2009 (Compare id. at 178, with id. at 24, 228).

travels alone by walking and taking public transportation.  She goes grocery shopping, but has her purchases delivered.  (Id. at 33, 130-133).  Johnson reported that she cannot perform household chores without assistance and has trouble sleeping due to her pain. (Id. at 131-132).  At the time of her hearing, Johnson was attending a GED class for three hours every day, to which she traveled by bus.  (Id. at 27-28, 31).  During her class, Johnson had to stand up briefly about once every hour to stretch.  (Id. at 32-33).

      B.    <u>Medical Records</u>

      The applicable Regulations define a "treating source" as any "physician, psychologist, or other acceptable medical source who provides . . . medical treatment or evaluation and who has . . . an ongoing treatment relationship with [the claimant]."  20 C.F.R. § 416.902.  The administrative record before the ALJ contained the records of Johnson's treatment by treating sources at the Hospital for Special Surgery, (R. 175-191, 233-236), and New York Presbyterian Hospital, (id. at 194-227), from October 2, 2009, through December 18, 2011.  These records include a Medical Source Statement completed by Dr. Alejandro Leali, Johnson's treating orthopedist, on June 8, 2011.  (Id. at 233-36).

      The ALJ also had before him the report of a consultative internal medical examination conducted by Dr. Vinod Thukral on February 21, 2012.  (Id. at 228-32).

      1.    <u>Dr. Leali's Findings</u>

      In Dr. Leali's June 2011 medical source statement, he diagnosed Johnson with patella immobility based on quadricep weakness, decreased strength in her left

quadricep, muscle atrophy, and muscle weakness.  (Id. at 233-34).  Dr. Leali noted that

the symptoms of Johnson's impairment "constantly" interfered with her "attention and

concentration," and could "be expected to last at least 12 months."  (Id. at 233).  He

described Johnson's prognosis as "unclear."  (Id.).  With respect to the effects of

Johnson's impairment on her ability to perform workplace tasks, Dr. Leali assessed that,

in the course of an eight-hour workday, Johnson could sit for at least six hours without

requiring any intermittent periods of walking or unscheduled breaks, but could not stand

or walk for more than two hours.  (Id. at 235).  Dr. Leali also opined that, as a result of

her impairment, Johnson could frequently handle and feel and occasionally reach, push,

and pull, but could not carry even ten pounds or perform activities that require her to

bend, stoop, crawl, climb, kneel, or squat.  (Id. at 236).

### 2.    Dr. Thukral's Findings

Dr. Thukral, the consultative examiner, conducted an internal medical

examination of Johnson on February 21, 2012.  (See id. at 228-32).  Dr. Thukral

described Johnson's chief complaints as left knee pain, weakness in her left leg, and left

femoral palsy, all stemming from Johnson's 1996 fall.  Johnson described her knee pain

to Dr. Thukral as "dull and intermittent," either "4/10" or "6/10" depending on the day,

and "precipitated by standing (for a long time), bending, and walking."  (Id. at 228).

Upon examination, Johnson was "in no acute distress," and was able to get

on and off the exam table and rise from a chair "without difficulty."  (Id. at 229).  Her gait

was "normal with or without the cane," and Dr. Thukral indicated that Johnson "does not

need [the cane] at this time." (Id.).  Johnson's left knee pain, however, prevented her from walking on her heels and toes and squatting.  Johnson could not perform left side straight leg raises, and flexion and extension of her left knee were limited to ninety degrees.  (Id. at 229-30).

Dr. Thukral diagnosed Johnson, insofar as relevant, with a history of left knee ligament tear, left knee open reduction internal fixation, left knee pain, and left femoral palsy.  (Id. at 231).  Dr. Thukral concluded that Johnson's prognosis was "fair," and that she had no limitation for sitting, but "moderate limitations for standing (for a long time), bending, pulling, pushing, lifting, carrying, or any other such related activities due to left knee pain."  (Id.).  Significantly, Dr. Thukral did not make any explicit finding with regard to Johnson's ability to stoop, crawl, climb, kneel, or squat, all functions Dr. Leali found Johnson could not perform.

C.    Procedural History

On November 28, 2011, Johnson filed an application for SSI, claiming a disability onset date of April 22, 2011.  (Id. at 38-39).  Johnson claims that her left knee pain prevents her from returning to work, and that she is disabled due to dislocation of her left knee, disuse atrophy, and the effects of the arthroscopic surgery of her left knee, among other reasons.  (Id. at 30, 38).

After the Commissioner denied Johnson's application on February 29, 2012, (id. at 51-55), Johnson requested a de novo hearing before an Administrative Law Judge ("ALJ"), (id. at 63-65), which was held before ALJ Mark Hecht on October 2,

5

2012, (id. at 16).[3]  Thereafter, on November 9, 2012, the ALJ issued a written decision in

which he concluded that Johnson was not disabled within the meaning of the Act and,

therefore, denied her application for SSI.  (Id. at 8-13).

In his decision, the ALJ determined that Johnson's left knee injury and

femoral nerve palsy were severe impairments that "result[ed] in more than minimal

limitations in [her] ability to perform basic work functions."  (Id.).  The ALJ also found,

however, that Johnson had the residual functional capacity ("RFC") to perform the full

range of sedentary work activities.  (Id. at 10-12).  The ALJ's decision became final on

February 26, 2014, when the Appeals Council denied Johnson's request for review.  (Id.

at 1-3).

On March 19, 2014, proceeding pro se, Johnson commenced this action

challenging the Commissioner's decision.  (ECF No. 2).  Both parties subsequently

consented to my exercise of jurisdiction for all purposes.  (ECF No. 9).  After the

Commissioner timely filed a motion for judgment on the pleadings pursuant to Rule

12(c), Johnson's opposition papers were due by November 26, 2014.  (ECF Nos. 11, 14).

Johnson initially did not respond, but she retained counsel on December 12, 2014.  (ECF

No. 16).  Thereafter, with the Commissioner's consent, Johnson sought, and I granted, an

extension of her time to respond.  (ECF No. 19).  On June 21, 2015, Johnson filed a

cross-motion for judgment on the pleadings, (ECF No. 20), and on July 17, 2015, the

_____

[3]         In the interim, on January 5, 2012, Johnson appears to have reapplied for SSI.
(See R. at 99-105).

Commissioner submitted a reply, (ECF No. 23).  On September 30, 2015, this Court issued an Order denying the Commissioner's motion, granting in part Johnson's cross-motion, and remanding this case for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).  (ECF No. 24).  This Opinion explains the basis for that decision.

II.      Applicable Law

     A.      Standard of Review

Under Rule 12(c) of the Federal Rules of Civil Procedure, judgment on the pleadings is appropriate when the material facts are undisputed and a party is entitled to judgment as a matter of law based on the contents of the pleadings.  See, e.g., Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988); Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214-15 (S.D.N.Y. 1999).

The Act, in turn, provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); see Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).  The term "substantial" does not require that the evidence be overwhelming, but it must be "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

A district court is not permitted to review the Commissioner's decision de novo. Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004); Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991). Rather, the court's inquiry is limited to ensuring that the Commissioner applied the correct legal standard and that his decision is supported by substantial evidence. See Hickson v. Astrue, No. 09 Civ. 2049 (DLI) (JMA), 2011 WL 1099484, at *2 (E.D.N.Y. Mar. 22, 2011). When the Commissioner's determination is supported by substantial evidence, the decision must be upheld, "even if there also is substantial evidence for the plaintiff's position." Morillo v. Apfel, 150 F. Supp. 2d 540, 545 (S.D.N.Y. 2001). This means that the ALJ's factual findings may be set aside "only if a reasonable factfinder would have had to conclude otherwise." Brault v. Soc. Sec. Admin. Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis omitted) (quoting Warren v. Shalala, 29 F.3d 1287, 1289 (8th Cir. 1994)).

B.      Disability Determination

The term "disability" is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "[W]hether a claimant is disabled or unable to work is a matter reserved for the Commissioner." Rodriguez v. Astrue, No. 02 Civ. 1488 (BSJ) (FM), 2009 WL 1619637, at *16 (S.D.N.Y. May 15, 2009) (citing 20 C.F.R. § 404.1527). In determining

whether a claimant is disabled, the Commissioner is required to apply the five-step

sequential process set forth in 20 C.F.R. §§ 404.1520 and 416.920.

> The Second Circuit has described this familiar process as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [sh]e is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits h[er] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider h[er] disabled without considering vocational factors such as age, education, and work experience . . . .  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the [RFC] to perform h[er] past work.  Finally, if the claimant is unable to perform h[er] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schweiker, 675 F.2d

464, 467 (2d Cir. 1982)); accord Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008).

The claimant bears the burden of proof with respect to the first four steps.  DeChirico v.

Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998).  If the claimant sustains their burden at

each of these steps, then the burden shifts to the Commissioner at step five.  Poupore v.

Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

In assessing whether a claimant has a disability, the factors to be considered

include:  "(1) the objective medical facts; (2) diagnoses or medical opinions based on

such facts; (3) subjective evidence of pain or disability testified to by the claimant or

other[s]; and (4) the claimant's educational background, age, and work experience."
Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980).  When reviewing the medical
evidence, the ALJ has the authority to select among conflicting opinions.  Veino, 312
F.3d at 588.  Thus, if there are genuine conflicts within the evidence, their resolution is a
matter committed to the Commissioner's discretion.  Id.

      C.     Treating Physician Rule

        The "treating physician rule" requires an ALJ "to grant controlling weight
to the opinion of the claimant's treating physician if the opinion is well supported by
medical findings and is not inconsistent with other substantial evidence."  Rosado v.
Barnhart, 290 F. Supp. 2d 431, 438 (S.D.N.Y. 2003) (citing 20 C.F.R. §§ 404.1527(d)(2),
416.927(d)(2)).  As the Second Circuit has explained, a treating physician's opinion
typically is accorded special consideration because of the "continuity of treatment he
provides and the doctor/patient relationship he develops" with the claimant, which
"place[s] him in a unique position to make a complete and accurate diagnosis of his
patient."  Monegur v. Heckler, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983).

        The Commissioner need not grant "controlling weight" to a treating
physician's opinion as to the ultimate issue of disability because this decision rests
exclusively with the Commissioner.  See 20 C.F.R. § 404.1527(d)(1); Snell v. Apfel, 177
F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is
disabled cannot itself be determinative.").  As the Second Circuit also has explained, "[i]t
is an accepted principle that the opinion of a treating physician is not binding if it is

contradicted by substantial evidence and the report of a consultative physician may constitute such evidence." Monegur, 722 F.2d at 1039 (internal citations omitted). Nonetheless, "[t]he failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Greek v. Colvin, No. 14 Civ. 3799, 2015 WL 5515261, at *3 (2d Cir. Sept. 21, 2015) (quoting Burgess, 537 F.3d at 129-130 (2d Cir. 2008)) (internal quotation marks omitted); 20 C.F.R. § 404.1527(c)(2).

Accordingly, if the ALJ fails to apply the correct standard in weighing a treating physician's opinion or fails to give good reasons for rejecting the opinion, a remand for further fact finding is the appropriate remedy. Halloran, 362 F.3d at 33; Dudelson v. Barnhart, No. 03 Civ. 7734 (RCC) (FM), 2005 WL 2249771, at *7 (S.D.N.Y. May 10, 2005).

D.    Function-by-Function Analysis

As noted above, Step Four of the sequential analysis requires the ALJ to consider "whether, [the claimant] has the [RFC] to perform h[er] past work." Rosa, 168 F.3d at 77 (quoting Berry, 675 F.2d at 467).  "RFC is an assessment of an individual's ability to do sustained work-related physical . . . activities in a work setting on a regular and continuing basis."  SSR 96-9P, 1996 WL 374184, at *1 (July 2, 1996).

When making an RFC determination, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in [20 C.F.R. § 404.1545(b)]." Id..  That regulation includes the following non-exclusive list of

physical abilities:  "sitting, standing, walking, lifting, carrying, pushing, pulling, or other

physical functions (including manipulative or postural functions, such as reaching,

handling, <u>stooping</u> or crouching)."  20 C.F.R. § 404.1545(b) (emphasis added).

"Social Security Ruling 96-8p cautions that 'a failure to first make a

function-by-function assessment of the individual's limitations or restrictions could result

in the adjudicator overlooking some of an individual's limitations or restrictions,' which

'could lead to . . . an erroneous finding that the individual is not disabled.'"  <u>Cichocki</u>,

729 F.3d at 176 (quoting SSR 96-9P, 1996 WL 374184, at *4).  In <u>Cichocki</u>, the Second

Circuit concluded that an ALJ's failure to make a function-by-function analysis in not a

<u>per se</u> error requiring remand.  729 F.3d at 177.  Nevertheless, the Court noted that

"[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to

perform relevant functions, despite contradictory evidence in the record."  <u>Id.</u>.

III.     <u>Discussion</u>

The question before the Court is whether the ALJ's determination that

Johnson was not disabled within the meaning of the Act between November 28, 2011 (the

date Johnson applied for SSI), and November 9, 2012 (the date of the ALJ's decision), is

legally correct and supported by substantial evidence.

A.     The ALJ's RFC Determination

       In her papers, Johnson contends that this case should be remanded, <u>inter</u> <u>alia</u>, because the ALJ erroneously determined that Johnson had the RFC to perform the full range of sedentary work activities.  In particular, Johnson alleges that the ALJ failed to consider Dr. Leali's finding that she was not able to stoop.  (Pl.'s Mem. at 14). Because the ALJ failed to provide any reason for not crediting the judgment of Johnson's treating physician regarding this relevant work function, the case must be remanded.

       In rendering his decision, the ALJ accepted Dr. Leali's opinion that Johnson could sit "for at least [six] hours during an [eight-]hour day."  (R. 12).  Nevertheless, he rejected Dr. Leali's opinion that Johnson was "unable to do any lifting," because this restrictive assessment was "inconsistent with [Johnson's] lower extremity impairment." (<u>Id.</u> at 11-12).  Importantly, however, the ALJ failed to address explicitly Dr. Leali's assessment that Johnson's impairment rendered her unable to stoop.  He therefore "fail[ed] to assess [Johnson's] capacity to perform [a] relevant function[], despite contradictory evidence in the record."  <u>Cichocki</u>, 729 F.3d at 177.

       At the outset, there can be no dispute that stooping is a "relevant function[]."  <u>Id.</u>.  Indeed, had the ALJ credited Dr. Leali's findings with regard to this function, he would have been precluded from determining that Johnson was capable of sedentary work, and thus would have been required to find that she was disabled.  <u>See</u> SSR 96-9P, 1996 WL 374185, at *8 (July 2, 1996) ("An ability to stoop occasionally . . . is required in most unskilled sedentary occupations . . . .  A complete

inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply.").

Turning to the second prerequisite for remand, it also is clear that Dr. Leali's statement constitutes "contradictory evidence in the record." Cichocki, 729 F.3d at 177.   Indeed, Dr. Leali indicated in his June 2011 medical source statement that Johnson could not perform activities that require her to bend, stoop, crawl, climb, kneel, or squat.  (R. at 236).  Although not expressly discussed in Cichocki, the failure to consider a claimant's ability to perform a relevant function is a particularly significant error when a treating physician, such as Dr. Leali, finds the claimant is unable to perform that function.  See Greek, 2015 WL 5515261, at *3 ("The failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand.") (quoting Burgess, 537 F.3d at 129-130) (internal quotation marks omitted); see also Miller v. Barnhart, No. 03 Civ. 2072, 2004 WL 2434972, at *7 (S.D.N.Y. Nov. 1, 2004) ("The . . . treating physician rule makes the ALJ's duty to develop the record all the more important.").

In an effort to avoid a remand, the Commissioner contends that the ALJ's failure to consider Johnson's ability to stoop is not legal error because "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits [the reviewing court] to glean the rationale of an ALJ's decision.'" (ECF No. 23 ("Def.'s Reply. Mem.") at 4 (quoting Cichocki, 729 F.3d at 178 n.3)).  More specifically, the Commissioner maintains that Dr. Thurkal's findings contradicted those of Dr. Leali,

14

and that it therefore was within the ALJ's discretion to credit the opinion of Dr. Thurkal, the consultative examiner.  (Def.'s Reply. Mem. at 4).

If it were clear from the record that this is what the ALJ did, the Commissioner might have a point.  In reality, however, Dr. Thurkal never specifically addressed Johnson's ability to stoop.  (R. at 231).  Instead, Dr. Thukral merely indicated that Johnson had "moderate limitations for standing (for a long time), bending, pulling, pushing, lifting, carrying, or <u>any other such related activities</u> due to left knee pain."  (<u>Id.</u>) (emphasis added).  This statement is subject to two possible interpretations.  On the one hand, Dr. Thurkal may have been opining that Johnson had moderate limitations with respect to stooping, an activity "related" to bending.  On the other hand, it is equally possible that Dr. Thurkal never addressed Johnson's ability to stoop.  Regardless, Dr. Thurkal's findings do not contradict Dr. Leali's.  Even based on the more favorable reading, Dr. Thurkal simply found the stooping limitation less severe than Dr. Leali.  Given those two possible explanations, and in the absence of an explanation by the ALJ, this Court cannot "glean" the ALJ's rationale for rejecting the express opinion of Dr. Leali that Johnson cannot stoop.  This necessitates a remand.

B.     <u>Additional Claims</u>

Johnson also contends that this case should be remanded because the ALJ failed to adequately develop the record, and that this failure resulted in errors in multiple parts of his sequential, disability analysis.  Because the case must be remanded for further explanation of Johnson's ability to stoop, there is no need to consider these additional

claims in detail. It bears mention, however, that Dr. Thurkal's evaluation relates to a time period during which Johnson evidently continued to receive treatment. (Id. at 35, 170-171). For this reason, on remand, the ALJ would be well advised to obtain and consider the records relating to that further treatment.

IV.    Conclusion

As set forth in my Order dated September 30, 2015, (ECF No. 24), the Commissioner's motion for judgment on the pleadings, (ECF No. 14), is denied; Johnson's cross-motion, (ECF No. 20), is granted in part; and this case is remanded pursuant to the fourth sentence of Section 205(g) of the Act for further proceedings consistent with this decision.

SO ORDERED.

Dated:    New York, New York
          October 6, 2015

FRANK MAAS
United States Magistrate Judge

Copies to all counsel via ECF

16